**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| SAVOY, *et al.* | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. AW-09-788 |
| | * | |
| CHARLES COUNTY | * | |
| PUBLIC SCHOOLS, *et al.*, | * | |
| | * | |
| Defendant. | * | |
| | * | |

********************************************************************************

<u>**MEMORANDUM OPINION**</u>

Plaintiff Jonathan Savoy ("Jonathan"), by and through his mother, Shanna Savoy, brought this case against Defendants Charles County Public Schools ("CCPS"), Justin Aglio ("Aglio"), and Robert Pascarella ("Pascarella"), on March 27, 2009, asserting various claims relating to an alleged battery. Currently pending before the Court is Defendant Charles County Public School's Motion to Dismiss (Docket No. 11), Defendant Pascarella's Motion to Strike and Dismiss Portions of the Complaint (Docket No. 15), and Defendant Aglio's Motion to Dismiss (Docket No. 19). The Court has reviewed the entire record, as well as the pleadings and exhibits, with respect to the instant motion. The Court held a hearing on these motions on January 25, 2010. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated more fully below, and described at the hearing, the Court will GRANT Defendant Charles County Public School's Motion to Dismiss (Docket No. 11); GRANT in part and DENY in part Defendant Pascarella's Motion to Strike and Dismiss Portions of the Complaint (Docket No. 15); and GRANT in part and DENY in part Defendant Aglio's Motion to Dismiss (Docket No. 19).

## I.      BRIEF FACTS

This case arises from the alleged battery of Plaintiff Jonathan Savoy ("Savoy"), by two employees of the Robert D. Stethem Educational Center ("Stethem") during the 2005-2006 school year. Jonathan is an African American who was thirteen years old at the time of the incident. Defendants Justin Aglio and Robert Pascarella are teachers at Stethem, which is an alternative school within the Charles County Public Schools ("CCPS") system.

After completing a several-day suspension, on March 30, 2006, Jonathan appeared at Stethem with the hope of being readmitted. The school policy was that a parent had to readmit the student to the school, but students could wait in a designated "R&R" room until the parents arrived. Jonathan's mother called the CCPS authorities and Stethem Center to inform them that she would be coming to the school to readmit Jonathan that day.

At some point while Jonathan was waiting for his mother, Defendant Aglio entered the R&R room, saw Jonathan asleep, and struck the back of his skull. Plaintiff asked why Aglio had struck him and Aglio stated that Jonathan was not supposed to be in school. Plaintiff explained that his mother was en route to readmit him. Aglio then grabbed Jonathan and dragged him out of the R&R room and into the hallway. Pascarella approached and asked why Aglio was taking Plaintiff to the office. When Aglio responded that Plaintiff was not supposed to be in school, Pascarella informed him that Jonathan's mother would be arriving later. Aglio then stated that Plaintiff had pushed a chair in the R&R room. Plaintiff then told Aglio to stop lying and moved back towards the R&R room. To halt Jonathan's retreat, Pascarella grabbed Jonathan's forearms and pushed him into the hallway wall, with the result that Jonathan's head struck the wall, which caused him to fall to the ground. Pascarella and Aglio then dragged Plaintiff to the Pupil Personnel Worker office, closed the door, and locked it. In this room, they hit and shoved

Plaintiff, culminating in the two men shoving Jonathan into a chair so forcefully that the chair broke. (Compl. ¶18.)

Another teacher heard Plaintiff's cries and sent Plaintiff's sister to the room to calm him. A police officer arrived on the scene, wrote a report, placed Jonathan in handcuffs for some unspecified amount of time, and then reported him to the Department of Juvenile Services. Later that day, Jonathan's mother took him to Civista Health, Inc. for a CAT scan, which doctors found to be normal. Dissatisfied with that diagnosis, Ms. Savoy then sought treatment at Children's Hospital, where doctors diagnosed him with a concussion.

On March 27, 2009, Jonathan, by and through his mother, Ms. Savoy, brought this case against Pascarella, Aglio and CCPS, alleging 1) violation of § 1981 of the Civil Rights Act; 2) violation of due process; 3) violation of  equal protection; 4) negligence; 5) battery; and 6) invasion of privacy and false imprisonment.[1]

## II.    STANDARD OF REVIEW

There are two ways to present a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).   First, a party may contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).   In this situation, "the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.*   Second, a party may contend that the jurisdictional allegations in the complaint are not true. *Id.*   In the latter situation, the Court may conduct an evidentiary hearing and consider matters beyond the allegations in the complaint. *Id.*

---

[1] Count VI contains two separate causes of action.

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In two recent cases, the United States Supreme Court clarified the standard applicable to Rule 12(b)(6) motions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Those cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (2007). That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In its determination, the Court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In addressing a motion to dismiss, a court should first review a complaint to determine what pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949-50. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Indeed, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual

context." *Id.* at 1954. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### III.    ANALYSIS

#### 1. Defendant Charles County's Motion to Dismiss

##### a.        42 U.S.C. § 1981 Racial discrimination (Count I)

Defendant CCPS argues that Plaintiff cannot sustain a claim racial discrimination in violation of 42 U.S.C. § 1981 (Count I) against CCPS because Plaintiff has not alleged that the individual Defendants' conduct was based on race, there was no contractual relationship between any of the Defendants and Jonathan, and the CCPS has Eleventh Amendment immunity from this claim. The Court agrees, and accordingly, the Court will dismiss the claim under 42 U.S.C. § 1981 (Count I) as to CCPS.

First, CCPS has immunity from this 42 U.S.C. § 1981 claim. Section 1981 claims against state agencies are barred by Eleventh Amendment immunity. *See Roberson v. Bowie State University*, 889 F. Supp. 235 (D. Md. 1999). The Eleventh Amendment protects unwilling states and state entities from suit in federal court. Maryland state courts, and federal courts in Maryland, considering "the pervasive State control over all aspects of Maryland public education," have concluded that Maryland county boards of education are state entities entitled to Eleventh Amendment immunity. *See Zimmer-Rubert v. Board of Education of Baltimore County*, 179 Md. App. 589, 603 (2008).

Maryland has not expressly waived Eleventh Amendment immunity in Maryland Code Annotated, Courts and Judicial Proceedings § 5-518(c), which provides that a "county board of education may not raise the defense of sovereign immunity to any claim of $100,000 or less." CJ § 5-518. "Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment. . . . [I]n

order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in federal court." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (U.S. 1985). The Maryland statute at issue waives only sovereign immunity, not Eleventh Amendment immunity, because the Maryland statute does not comply with the express language requirements and forum provision requirements laid out in *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241 (U.S. 1985). Because Maryland Code § 5-518(c) does not include a clause explicitly subjecting the state to suit in federal court, it does not waive Eleventh Amendment immunity, and thus CCPS is immune from any § 1981 claim.

Next, the Court agrees with Defendant CCPS's contention that Plaintiffs do not show all of the elements of a prima facie case of § 1981 discrimination. Section 1981 states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.
>
> For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981. To state a cause of action under § 1981, generally, a plaintiff must show: "(1) he or she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities protected by the statute." *Baltimore-Clark v. Kinko's, Inc.*, 270 F. Supp. 2d 695, 699 (D. Md. 2003).[2]

---

[2] In their briefings, Plaintiffs argue that the Court should apply a different test which does not require a showing of intentional discrimination, enunciated in *Callwood v. Dave & Buster's, Inc.*, 98 F. Supp. 2d 694 (D. Md. 2000). But, Plaintiffs have presented no rationale as to why that test is applicable in this scenario. That case arose from discrimination at a public accommodation, and the test developed in that case has not been expanded beyond that

Here, Plaintiffs have not shown that the Defendants intended to discriminate on the basis of race. Plaintiff's counsel candidly admitted at the hearing that he did not have any evidence of discriminatory purpose by the defendants in this case. Plaintiffs merely allege that Jonathan was African American and that they do not know of other students subject to similar discipline.

Plaintiffs have also failed to show that a contractual relationship existed between Plaintiffs and Defendants. In reviewing § 1981 claims, courts typically assess "whether a plaintiff's right to contract has been impeded, thwarted, or deterred in some way . . . or whether special conditions have been placed on plaintiff's right to contract."  *Kinko's*, 270 F. Supp. 2d at 699.  Plaintiffs have not pointed to any cases brought under § 1981 where a Court inferred a contractual relationship from the student-school relationship. This Court will not do so. For these reasons, the Court will dismiss the § 1981 claim as to all Defendants.

**b.     Equal Protection (Count III)**

Defendant CCPS argues that Plaintiffs have failed to show the necessary elements to make out a claim under the Equal Protection Clause of the United States Constitution as Plaintiffs do not show the Defendants acted with discriminatory intent, nor do they allege sufficient information to infer discriminatory intent. The Court agrees. The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amend. XIV § 1. To make out a claim for a violation of the Equal Protection Clause of the U.S. Constitution, the Plaintiffs must demonstrate the violation arises from intentional or purposeful discrimination. *See Veney v. T.V. Wyche*, 293 F.3d 726, 730-31 (4th Cir. 2002). Intentional discrimination is demonstrated "through a facially

setting.

discriminatory act, or by providing extrinsic evidence such that a discriminatory system designed to favor one class over another can be inferred from the circumstances." *Reaching Hearts International, Inc. v. Prince George's County*, 584 F. Supp. 2d 766, 781 (D. Md. 2008). Plaintiffs' evidence of discriminatory intent is that Jonathan is African American and that Plaintiffs do not know of any instance where Defendants Aglio and Pascarella used force to prevent a non-African American from returning to a classroom. Defendants argue that this admission indicates that Plaintiffs cannot establish, even inferentially, that Defendants Aglio and Pascarella were motivated by racial animus when they allegedly removed Plaintiff Jonathan from the classroom. Because Plaintiffs present no evidence of intentional discrimination, and no evidence that can allow the court to make an inference of discriminatory intent, Plaintiffs cannot sustain a claim for violation of the Equal Protection Clause. The Court will dismiss this claim as to all Defendants.

### c.      Negligence (Count IV)

CCPS moves to dismiss the negligence claim on the ground that Plaintiffs have not alleged the individual Defendants acted negligently during the course of their employment and have not alleged any negligent acts by the CCPS. The negligence claim in the Complaint is clearly based on the individual defendants' battery. The Court finds that the negligence claim is merely a reassertion of the battery claim, and does not find Plaintiffs have set forth an adequate basis for a negligence claim. The Plaintiffs allege the Defendants "breached that duty of care and allowed themselves to 'lose control' of their behavior and then commit battery on plaintiff, commit physical force on plaintiff and falsely imprison him." (Compl. ¶ 49.) Such conclusory allegations are insufficient to establish a claim for negligence. Thus, the Court will dismiss the

negligence claims against CCPS as Plaintiffs have not alleged sufficient facts to make a prima

facie case of negligence.

      **d.**      **Battery (Count V) and False Imprisonment (Count VI)**

Defendant CCPS contends that as a matter of law it cannot be liable for the intentional

torts of its employees under a *respondeat superior* theory of liability. The Court agrees. The

CCPS is not liable for those acts that occurred outside the scope of the individual Defendants'

employment. Plaintiffs have not alleged sufficient evidence to show that these acts occurred

within the scope of employment, and Defendant CCPS has made a strong showing that they did

not. First, the Maryland Code Annotated, Section 7-306(a) clearly bans corporal punishment,

providing, "[n]otwithstanding any bylaw, rule, or regulation made or approved by the State

Board, a principal, vice-principal, or other employee may not administer corporal punishment to

discipline a student in a public school in the State." 1996 Md. Laws, Ch. 10, E.A. § 7-306. The

Charles County Public Schools Policy 5157 also bans corporal punishment. Additionally,

Plaintiffs themselves have characterized the Defendants' behavior as "willfull and wanton." In

*Tall v. Board of School Commissioners*, 120 Md. App. 236 (1998), the Maryland Court of

Special Appeals determined that the trial court had properly granted summary judgment to the

defendant school board because a teacher's intentional hitting of a child with a ruler was clearly

outside the scope of employment. The Court explained "the act of physically striking a disabled

child" could not possibly "be considered in furtherance of the Board's objective of educating

disabled children, particularly when, as here, both State and local law forbid the use of corporal

punishment for discipline purposes. . . . [I]t was so extreme in nature, and so far beyond the

bounds of appropriate behavior, that it cannot possibly be considered to have been in furtherance

of appellee's objectives." *Tall v. Board of Sch. Comm'rs*, 120 Md. App. 236 (1998).

Similarly, it is difficult to imagine what pedagogical purpose was served by the hitting, knocking down, and dragging of the student into a separate room to beat him. Additionally, Plaintiff had to seek medical treatment for the injuries, which courts have found weighs in favor of a finding that the injury occurred outside the scope of a school system employee's scope of employment. The Court finds that the acts of battery in this case constituted intentional torts that fell outside the scope of employment, and accordingly the Court will dismiss these claims as to CCPS.

> **e.      Substantive Due Process (Count II)**

Defendant CCPS argues that it is not liable under the Substantive Due Process Clause of the U.S. Constitution for the alleged battery because the intentional torts of its employees cannot be considered state acts, and thus liability does not attach to the Board. The Court agrees.

The Due Process Clause "confers no affirmative right of government aid, even where such aid may be necessary to secure life, liberty, or property . . ." *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195-96 (1989). Only in certain limited circumstances where a state renders an individual unable to care for himself, does the state have constitutional obligations with respect to a person's welfare. *Id.* The CCPS's actions do not fall into this category of exceptions.

Additionally, an employer is only liable under *respondeat superior* where the employee was acting within the scope of his employment when harm to the third party occurred. *Montgomery County Board of Education v. Horace Mann Insurance Co.*, 383 Md. 527 (2004). Here, Defendants Aglio and Pascarella's battery cannot be considered state acts as the Court does not find that they occurred in the course of their employment. Thus, they CCPS would only be liable for its own acts of negligence. "Municipalities are not liable pursuant to *respondeat*

*superior* principles for all constitutional violations of their employees simply because of the employment relationship. Instead, municipal liability results only 'when execution of a government's policy or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official capacity, inflicts the injury.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Plaintiff does not allege that CCPS was negligent in its policies or practices. Since Plaintiff has not made allegations regarding CCPS's customs or policies, and the intentional torts fell outside the scope of the individual defendant's employment, the Substantive Due Process violation claim must be dismissed against CCPS.

### 2.   Defendant Pascarella's and Defendant Aglio's Motions to Dismiss

Defendants Pascarella and Aglio filed separate motions to dismiss, but both rely on the same arguments. Thus, the Court will address their motions together. Defendants also assert some of the arguments that CCPS made in its Motion to Dismiss. Thus, where applicable, the Court will refer to its earlier discussion with respect to these arguments.

#### a.       42 U.S.C. § 1981 Racial discrimination (Count I)

Defendants Pascarella and Aglio move to dismiss Plaintiff's 42 U.S.C. § 1981 Racial discrimination claim on the ground that Plaintiff has failed to allege Defendant possessed a discriminatory animus and has failed to show Defendant infringed upon a contractual relationship or other right. As described above, the Court agrees, and thus will dismiss this claim against these Defendants, as well as against CCPS.

#### b.       Equal Protection (Count III)

Next, Pascarella and Aglio contend that, as with the § 1981 claim, the Equal Protection Claim cannot be granted because there is no allegation of discriminatory animus. As described above, absent a showing of discriminatory intent or evidence from which to infer discriminatory

intent, Plaintiff's equal protection violation claim fails against all Defendants, and the Court must dismiss this claim.

### c.    Negligence (Count IV)

Defendants Pascarella and Aglio argue that as Charles County Board of Education administrators, they are statutorily immune from suit for a Maryland common law cause of action absent a showing of malice or gross negligence, pursuant to Section 5-518(e) of the Courts and Judicial Proceedings Article. That statute provides that "a county board employee acting within the scope of employment, without malice and gross negligence, is not personally liable for damages resulting from a tortious act." CJ 5-518(e). By definition, a showing of negligence cannot include malice or gross negligence. Thus, Defendants are statutorily immune from the negligence claim. Moreover, as described above, the Court does not believe that Plaintiff has sufficiently plead a negligence claim, separate from its battery claim, and for that reason, will dismiss the negligence claim against the individual Defendants.

### d.    Battery (Count V)

Defendants Pascarella and Aglio also argue that they should be immune from the battery claim because the alleged battery occurred during the course of employment and thus they are entitled to statutory immunity under Md. Code. Ann. Cts. & Jud. Proc. § 5-518. As described above, the Court believes that the facts alleged indicate that this battery occurred outside the scope of employment. Thus, this claim will remain against the individual Defendants.

### e.    False Imprisonment (Count VI)

The individual Defendants contend that the detention of Jonathan in the Pupil Performance Worker Room was too brief to constitute false imprisonment in the school context,

given the authority teachers have over students' locations. The Court believes Plaintiff has plead

sufficient facts to make out a possible claim of false imprisonment.

In Maryland, a prima facie case of false imprisonment consists of "[1] deprivation by

one person of the liberty of another [2]] without his consent, whether by violence, threat or

otherwise," and 3) without legal justification. *Manikhi v. Mass Transit Administration*, 127 Md.

App. 497, 733 A.2d 372 (1999). Defendant relies heavily on *Escobar v. Montgomery County.*

*Board of Educuaction*, 2001 WL 98600 (D Md. Feb. 1, 2001), for the proposition that a school

administrator can properly detain a student for two hour outside of his office without being liable

for false imprisonment claims. The Court in that case explained that students in public schools

have constrained liberties compared with adults in public settings, and that for many purposes,

"'school authorities act in loco parentis'. . . . For this Court to hold that [the principal's]

detention of [the student] deprived the Plaintiff of his liberty of movement, would result in all in-

school and after school detentions to be considered false imprisonment." *Escobar v. Montgomery*

*County Bd. of Educ.*, 2001 U.S. Dist. LEXIS 1069, 13-16 (D. Md. Feb. 1, 2001) (citing *Bethel*

*School Dist. No. 403 v. Fraser*, 478 U.S. 675, 684, 92 L. Ed. 2d 549, 106 S. Ct. 3159 (1986)).

In this case, Plaintiffs easily establish the first prong of the prima facie case of false

imprisonment—that Jonathan did not consent to the confinement in the office. Additionally,

Plaintiffs may have established the second prong—deprivation of liberty. Certainly, Aglio and

Pascarella were within their rights in detaining a student in an office while awaiting his re-

admittance into the school, but it appears that Defendants may have taken Jonathan into the

Office for a different reason. Finally, Defendants would not have had legal justification in taking

Jonathan into the room specifically to beat him. Thus, there is a possible claim for false

imprisonment on these facts, and much of the determination hinges on interpretation of what

liberty was deprived, which can be determined during discovery. As such this claim will not be dismissed.

### f.     Substantive Due Process (Count II)

Defendants Pascarella and Aglio claim that the injury Aglio allegedly inflicted in this case does not rise to the level of outrageousness and shock to the conscience required for a substantive due process violation. School corporal punishment violates a student's right to substantive due process where, "the force applied caused injury so severe, was so disproportionate to the need presented and was so inspired by malice and sadism rather than a merely careless or unwise zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience." *Hall v. Tawney*, 621 F. 2d 607 (4th Cir. 1980). There is some variance in courts' determinations of how severe the injury must be for courts to consider it shocking to the conscience. Injuries that have not arisen to the required level of brutality include pricking a student in the arm with a straight pin, hitting a student with a paddle several times, and pulling a student across a desk, into a bulletin board, onto a floor, and then punching a student in the chest causing bruises and red marks. *See Kurilla v. Callahan*, 68 F. Supp. 2d 556 (M.D. Pa. 1999); *Brooks v. School Board of Richmond*, 569 F. Supp. 1534, 1535 (E.D. Va. 1983); *Hale v. Pringle*, 562 F. Supp. 598, 601 (M.D. Ala. 1983). Defendants claim that because Jonathan only suffered a headache, his injury is insufficiently severe to constitute a substantive due process violation. Additionally, Defendants argue that Plaintiff has only made conclusory allegations that the Defendants' behavior was "malicious" or "willful" but that in fact, the behavior does not reach the level of "malice and sadism" required to constitute a substantive due process violation.

Because the incident was apparently not limited to a slam against the wall, but also included dragging the student into a room for further beating, and resulted in his diagnosis of a

concussion, it may rise to the level of shocking the conscience.  Furthermore, given that there was no apparent need for the additional beating in the sequestered setting, as the student had already fallen to the floor after the initial strike, this act may have been motivated by malice. Thus, the Court will not dismiss the substantive due process violation claim at this stage.

> **g.**      **Invasion of Privacy (Count VI)**

Plaintiff agrees to dismiss its invasion of privacy claim, thereby limiting Count VI to only one cause of action—false imprisonment.

> **h.**      **Defendant Pascarella's Motion to Strike Portions of the Complaint**

At Defendant Pascarella's request, Plaintiff agrees to strike the language regarding unlawful sexual harassment in paragraphs 1 and 37 of the Complaint, which he submits he included in the Complaint by mistake. Plaintiff also agrees to dismiss any reference to 42 U.S.C. § 1985.

## IV.      CONCLUSION

For the foregoing reasons, the Court will GRANT Defendant Charles County Public School's Motion to Dismiss (Docket No. 11); GRANT in part and DENY in part Defendant Pascarella's Motion to Strike and Dismiss Portions of the Complaint (Docket No. 15); and GRANT in part and DENY in part Defendant Aglio's Motion to Dismiss (Docket No. 19). The Court will also issue a scheduling order in this case. A separate Order will follow.


_____February 5, 2010_____                          _____/s/_____
          Date                                      Alexander Williams, Jr.
                                                    United States District Judge